# EXHIBIT A

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 1 of 29

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

In re:

ADEMOLA ADETULA and HOMER STRICKLAND,

Plaintiffs,

vs.

UNITED PARCEL SERVICE, UNITED PARCEL SERVICE GENERAL SERVICES,

Defendants.

Case No. 2:18-CV-00612

BEFORE THE HONORABLE BROOKE WELLS

May 15, 2019

Transcript of Electronically Recorded
Motion Hearing

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 2 of 29

**Appearances of Counsel:**

| | |
|---|---|
| For the Plaintiffs: | Randy M. Andrus<br>Attorney at Law<br>Andrus Law Firm LLC<br>299 S. Main Street<br>Suite 1300<br>Salt Lake City, Utah 84111 |
| For the Defendants: | David T. Barton<br>Attorney at Law<br>BurnsBarton LLP<br>Anchor Centre West<br>2201 E. Camelback Road Suite 360<br>Phoenix, Utah 85003 |

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 3 of 29

**Salt Lake City, Utah May 15, 2019**

* * * * *

THE COURT: Calling now case number 2:18-CV-612 assigned to Judge Parrish and referred to me. Let me first ask who we have on the phone.

MR. BARTON: Good morning, Your Honor, David Barton with the law firm of Burns Barton representing United Parcel Service.

THE COURT: All right. Thank you, Mr. Barton. Who do we have in court today?

MR. ANDRUS: Good morning, Your Honor. Randy Andrus for the plaintiffs who are present, Mr. Adetula and also Mr. Strickland.

THE COURT: Welcome, gentlemen. You probably notice there is something amiss with my voice and there is. I have had some problems with it. I had a voice treatment and this is apparently what I get for a week or so. Anyway, I hope you can hear me. If you can't, please ask me to try and speak up and I'll do my best.

All right. This is now a second status conference after we had our first one and after the court issued its order. Let's -- I think we have two key issues to deal with today. First is plaintiffs' Amended Motion For Discovery and Motion to Expedite the Discovery Motion and for that the hearing is set. But the issues are what is the relevant

time period for discovery is it as plaintiffs claim 1975 or 1983 or is it October 31st, 2014, or some other appropriate day. Also, I think we have the question to answer of can plaintiffs -- one plaintiff's request be used to get discovery for both plaintiffs. All right. Now, I think the first issue is relevant for plaintiffs. Let me ask counsel if you'll proceed, please.

MR. ANDRUS: Yes, Your Honor, thank you. Yes our position on the relevant time period is that yes there could be various dates that could be selected. One would be certainly 1975 when UPS first came to Utah, or 1983 when one of the plaintiffs was first hired or 1993 when --

THE COURT: Excuse me, go ahead.

MR. ANDRUS: 19 -- actually 1993 is what we propose. That's the time that the --

THE COURT: Go ahead.

MR. ANDRUS: -- the call center where plaintiffs worked in Salt Lake City was organized so that makes maybe more sense if it's not earlier, but nevertheless, another one could be, you know, just say randomly 2000 or even say 2003 but I hesitate to go there because the defendants have asked for the plaintiffs medical records and they obviously want those medical records back to 2003 so they think that there is information that's beyond the quote unquote the statute of limitations in the case filing that would be relevant for

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 5 of 29

their claims. Likewise we believe that the relevant verdict for discovery may be different than the liability period. And so I want to be clear that I think that the defendants are kind of trying to box plaintiffs into a liability period but for purposes of discovery the relevant period may be information that's before the liability or the violation period to show the impact that happened in the liability violation period.

00:06:10

THE COURT: Let's be practical what would your bottom line be in terms of time?

00:06:29

MR. ANDRUS: We are requesting 1993 simply because that's when the call center where all of this happened was organized and started. And it doesn't seem like it's any more burden or proportional or anything else problems to enter that date as opposed to some other date to show these patterns and practices and the impact of the decisions on plaintiffs that have an impact during the liability or the violation period for the treatment that they did have.

00:06:51

And there is also this notion of continuing acts are relevant particularly in hostile work environment claims such as here this continuing violation doctrine. So all of these documents that we requested cast light on the allegations and the defenses of the parties.

00:07:14

THE COURT: Remind me again when each defendant began his employment.

00:07:39

MR. ANDRUS: Yes. Mr. Strickland, he began his employment back in the 1983-1984 timeframe. And Mr. Adetula began his employment in approximately 1995. And so that's when this call center at GBS call center that they work at was organized. So that's our position in terms of the discovery that casts light on we need that width and breadth to be able to show and address the decisions that were made, the conduct and the acts of discrimination, and put those in context for the liability period. And so we believe it's not unreasonable and the defendant's have not shown that it is going to be anything different than punching in a different date and providing us with that information than something -- some later date. Thank you.

THE COURT: Thank you. Counsel?

MR. BARTON: Thank you, Your Honor. You know statutes of limitations serve a purpose. One purpose obviously is to require that claims be brought in a time when information and memories and data are available. So in the Title VII context, the context of this case, the statute of limitations is 300 days. The plaintiff may not maintain a claim based upon an event that occurred more than 300 days before he or she files for charge of discrimination. And if we take the most generous approach in this case and look back at the very first charge filed by either of these gentlemen, that is October of -- or August 31st of 2015

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 7 of 29

which already is pushing the document retention limits and guidance that the law has with regard to preserving documents and data. The other reason for the statute of limitations is exactly that. A company like UPS cannot
00:10:07
maintain infinitely or indefinitely records or documents related to employees. And so in this case even if we took the date that the employee first put the charge on file in 2015 and said okay what's 300 days before that, we go back to October 31st 2014 that is five years of data, five years
00:10:33
of decisions that arguably could have impacted the employment of these employees and that's plenty of data to show if there is such a claim that in fact has been some discriminatory acts maintained against these individuals. What plaintiff has proposed is that we go back to 1993.
00:10:53
That is 26 years of data potentially and I can't even make any assurances that we have that data because our document retention guidelines are all geared to the law. We keep records as long as we are required to keep them under the law. And so I can't even make any assurances about what we
00:11:14
may or may not have going back that far. What I can tell you is that any evidence from prior to October 31st, 2014 is going to be inadmissible because plaintiffs simply cannot maintain a claim based on something that happened prior to that date because he didn't exhaust his administrative
00:11:35
remedies, it is barred by the statute of limitations.

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 8 of 29

00:11:58
00:12:18
00:12:36
00:12:53
00:13:14

And so it does not seem proportional to the needs of this case to require UPS to search for documents that it may or may not have that go back 26 years when in fact those documents will never serve and cannot serve as a basis of a claim. So our position is look, we'll be glad to produce everything that could be relevant prior to October -- August of 2015, that's what's proportional to the needs of this case, that's what's appropriate to the needs of this case, and it's not as if plaintiff claims that it's a matter of putting in a different number and just simply spitting out the data. As I explained in our -- in our response or our status conference, as I explained during our meet and confer, the affirmative action plans are a good example. The law requires you to maintain the data for affirmative action plans for the current year and the two prior years. That's all I have got. So I can't just -- I can't put in more data and say okay, the relevant period is now, you know, 26 years and this will give me all of the data. It's going to be a frustrating exercise, it's going to be an exercise of challenging whether everyone of these databases go back that far. We change databases from time to time, we change storage capacities from time to time, we change software programs reviews from time to time, so it requires the 26 year request made by plaintiff would simply be unduly burdensome in this case and would not be proportional for

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 9 of 29

the needs of this case.

THE COURT: Well then how hard would it be to actually look and see if you have data going back that far?

MR. BARTON: Um, I would -- this is the other thing I tried to explain to plaintiff during our meet and confer, Your Honor. It is not as if -- he keeps claiming that UPS has some relational database where all of this is stored. That is not the case. Um, for example, take the request for personnel file, okay? UPS does not maintain what you would traditionally associate with a personnel file, a manila file folder in somebody's file cabinet somewhere related to these employees. We don't have that kind of a thing. We have information about employees that we keep in different databases that's available for a period of time. And that information includes, for example, their application for employment, their health related benefit requests and those kinds of things which also change overtime. So to answer the question how hard would it be to know? It depends on the type of information requested. It depends on the number of databases that have been used in that period of time to store or collect that data. It depends on -- on what plaintiff is asking for. Here is another good example. Plaintiff in one of his requests asks us to produce information about the supervisors who had been employed at GBS during the quote relevant time period. Well, I can go

back, I have records that would tell me what -- what supervisors have been employed from 2015 to present because that's -- that is information that I have in my current database. And then he wants me to tell him the race, the ethnicity, the evaluation criteria, all of that with regard to every one of those employees. Well I don't keep evaluation criteria that's a whole other database for those supervisors. So just to answer that request, I have got to look at least two different databases, my list of employees who have been supervisors in that region in that -- in GBS in Salt Lake City, and then I have got to get to the -- to the evaluation system that was used during their relevant periods. So during the past five years there have been two evaluation systems used for supervisors and managers in Salt Lake City. If I go beyond five years, I'm going back to paper that I probably don't even have to be honest with you because they were not using an electronic format.

THE COURT: Don't you keep data for purposes of reporting as to the number of minority employees you have?

MR. BARTON: We do have self-identifying data information. The court may be familiar with what are called EEO1 reports. These are -- this is information that the employees self-identify about their race or national origin. If they choose, they can opt out, but if they choose to identify themselves as a minority applicant or employee,

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 11 of 29

they can. We do keep that. But again, it is according to the statute of limitations which is the current year and two prior years. So that's only three years of data that I have got.

00:17:12 THE COURT: All right. I understand your position. Anything else?

MR. BARTON: I'm sorry I haven't made it clear. My point is, Your Honor, there is a relevant time period here and that time period is the -- should be and equal to the statute of limitations as the *Oppenheimer Fund* case from the Supreme Court has said information prior to that relevant time period as it might pertain to plaintiff's claim is not going to be admissible in this case because it cannot form the basis of his claim. So we believe that the relevant time period should be limited to the statute of limitations. That gives him five years of data. That is a proportional response.

00:17:31

00:17:50

THE COURT: All right. Thank you. Counsel, any response?

00:18:09 MR. ANDRUS: Yes, Your Honor. He just cited this *Oppenheimer Fund* case, but even the case itself says sure there is this statute of limitations period, that's the liability period, but the relevant period for purposes of discovery which is broad, the *Oppenheimer* case says unless the information sought is otherwise relevant to the issues

00:18:35

in the case and that's the situation that we have here. This information is relevant to the issues in the case. And whether -- a test is not whether it is admissible later on even, but what is, of course, the code was changed in terms of lead to something that is admissible but it's relevant for the defenses and the claims that are being made.

We did cite, the last time we were here, and provided a copy to counsel and the court of that *EEOC versus UPS* case, 2017, where it specifically talked about the *Oracle* database. And so to say that they don't have this data when they -- it doesn't even sound like they have looked or made a search to find out or what it is, then we submit that they haven't made a diligent effort to do that, to look at the various sources and pockets that they may have this data in. And, of course, I want to underscore the fact that UPS, Inc. has not provided any response to the discovery at all. Thank you.

THE COURT: All right.

MR. BARTON: May I address that, Your Honor?

THE COURT: Yes, I was going to ask you to, please.

MR. BARTON: Thank you. First of all, the EEOC -- sorry, the *EEOC versus UPS* case his reliance on that is misplaced. That case was looking for one very specific data set. They were looking for information related to injuries and UPS employees that are kept and again a very specific

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 13 of 29

00:20:40 00:20:57 00:21:16 00:21:44 00:22:01

database for -- that could be produced, that had nothing to do with employment discrimination or promotions or anything like that. So for him to suggest that I have got a relational database and that the *EEOC* case, *EEOC versus UPS* out of the Sixth Circuit proved that is absolutely false. Look at the case and look at the information that was at issue there had nothing to do with employment, it had to do with employee injuries and data maintained according to OSHA requirements with regard to those employee injuries. That's a different database and yes, as I say, we have -- I can tell you this, UPS has more than 600 databases where they keep information relative to their operations and their employees. So there are a lot of databases where we have information which is why it is very important for us to have a -- and those databases change, which is why it's very important for us to have a very clear definition of what time period we're looking at so that I can come back to the court and tell you yes we have that data or no, we don't. And that's what we met about and met and conferred about is why we needed this information from the court is we need the court to decide okay, what is the period of time I'm going to ask UPS to look and we will. At present, our position has been that it is limited to statute of limitations. Obviously if the court sees it differently, we'll go back and look and see if there is additional data back there that

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 14 of 29

we may be able to get. I don't believe there will be much because it's not required under any data retention guidelines or any law but we'll look.

THE COURT: All right. Then I will, although not at this moment, determine what that relevant time period is. So that will be taken under advisement. As to the second question, Mr. Andrus.

MR. ANDRUS: I may have forgotten that second question I believe it is the affirmative action plans.

THE COURT: Yes, I am -- and the question about discovery as to one client being available to the second plaintiff.

MR. ANDRUS: Okay. Right, yeah. When we propounded the discovery back in November, we propounded it to both defendants. And they both have been named, they're parties and so the issue here on that is we think it is just unbelievable that a defendant who has propounded with discovery has not provided a response. We raised that all along the way in our meet and confer letter, in discussions before the court the last time, we raised it in the May 3rd meet and confer session and still to this day I have not received a response by UPS, Inc. to the discovery. And so we request that the court order UPS, Inc. to provide fully complete verified responses without objections. They seem to have been waived at this point because they have

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 15 of 29

consciously just not done it despite multiple requests and bringing it to their attention to do so.

So it is just I think in their response they indicated something well we'll make a response or we'll confirm what GS, the other entity, did or didn't do. Well they still haven't done that. So we're left here today six months after the fact with no discovery responses from that -- that defendant. So we request that the court order that. And as to the other part of that question or is that -- does that address that?

THE COURT: No, go ahead.

MR. ANDRUS: They wanted to raise the affirmative action plan and limit say well we have -- first of all we couldn't get a definitive response to them what documents they were withholding based on this any kind of a privilege including a self critical analysis privilege and now it appears that in their status report they indicate they really haven't done an analysis but there is -- there are documents out there about affirmative action plans and so now they say well, we don't have affirmative action we only do affirmative action plans for disability and veterans and that's what we have to report to the government, but we may have this data, this information, about race and gender out here but we don't have to produce that to you because somehow it's self critical analysis. Well, I believe there

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 16 of 29

is no self critical analysis and I think in their report they have all but said that they haven't done an analysis but there is this data out there. So I think they have kind of let us down a red herring here in terms of -- of what are talking about. And I guess it kind of boils down if they have documents responsive to the requests, then please identify them and produce them. If you don't have documents then say you don't have documents but don't let us have to keep spinning our wheels here. But we think that there are documents and specifically as to the affirmative action plans there is an equal opportunity statement that they have and I after we looked at this, and I do have a copy for the court and counsel, it is document that they have not produced in the 5,000 pages that they have produced which talks about affirmative action plans and it even says that the -- that the affirmative action plan can be available upon review by applicants and employees by appointment with the district human resources manager. And I have highlighted that and I can provide that to the court if --

THE COURT: No.

MR. ANDRUS: No?

THE COURT: Not necessary.

MR. ANDRUS: Thank you. So they do have these plans and so that we do ask that this -- that the court order that any affirmative action plans or programs or information

program I guess they call it or plans be produced to us so that we can look at it. Their literature says that it exists and it will be made available and requests have been made by the plaintiffs but they have not been shown. So this data and this affirmative action plans we ask that they be ordered to produce.

THE COURT: Mr. Barton, I'm concerned in the same way that the plaintiffs are that it doesn't appear that there has been any action taken to look for these things. What is your response?

MR. BARTON: That's not true, Your Honor. Let me and if you look at our response our statement of summary of the defendant's status report that we filed on May 8th, on Page 6 I explain exactly what I told the plaintiff during our meet and confer which is that UPS gathers information about, on a voluntary basis from employees who self-identify that it gathers pursuant to Executive Order 110246 to assess its -- the makeup of its employees based on minority status, disability status, veteran status, and gender. That information is governed by regulations published by the OFCCP.

The OFCCP says that information related to veterans and the disabled must be made available. So the document that Mr. Andrus is pointing to saying that we will make that information available is exactly that, it is information

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 18 of 29

related to veterans and women employed by UPS, and it is available and we would make it available. But in this case, it absolutely has nothing to do with the claims in this case. Veterans, the number of veterans we employ and the number of women we employ means nothing in a race discrimination and failure to promote case.

So we point that out to Mr. Andrus and said tell us why we should produce what we're required to produce because we're not required to produce under OFCCP regulations the information we gather related to minority status. That the regulations simply do not require us to produce that information. In fact they require that we maintain that information confidential because it is information we get voluntarily from our employees.

The other thing I explained to Mr. Andrus is that we gather this information only on a nationwide basis. So I have information, for example, about GBS as a whole across the country. What he has asked for, and I have told him I don't have, is specific information to Salt Lake. What are the racial demographics of the UPS employees in Salt Lake City. I don't -- our reports don't break it down that way. The EEO1 reports that we prepare for the Office of Federal Contractors Compliance only have nationwide data and information which as I explained to Mr. Andrus I don't know how it is going to possibly be helpful to him to show that

there is as he claims that there is some kind of some discriminatory animus going on in Salt Lake City. That's his claim.

THE COURT: Is Salt Lake City part of a smaller or a larger region?

MR. BARTON: We gather data on a nationwide basis. So I have a -- I have a report of the nation of my -- of the information that --

THE COURT: But are you saying, I'm just asking, are there regions within that UPS data collection basis? Like is Salt Lake City part of a Rocky Mountain Region such that such information could be broken down to cover let's say those Rocky Mountain states?

MR. BARTON: The answer is that we do not compile the data in that way. And I don't believe, I haven't asked, I was asked if we could get information for Salt Lake City only and they said no, because the data that we gather is not compiled or collected in that way, it's collected on a nationwide basis. So I have asked and been told no, that that is not -- I can't do that, I can't break it down, I can give you a nationwide report but that's all I have got.

THE COURT: All right. Mr. Andrus?

MR. ANDRUS: Well, we would like to have the nationwide report because it gives the -- it sheds light on what happens in the subset of Salt Lake City as the statistics

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 20 of 29

versus nationally.

THE COURT: All right then, Mr. Barton, if it is available on a nationwide basis can you make that available?

MR. BARTON: I can make our EEO1 report available, yes.

00:33:41 THE COURT: All right, then that's solved.

MR. BARTON: By the court's order, by the way, because it is confidential. So I need --

THE COURT: I --

MR. BARTON: We don't turn it over.

00:33:50 THE COURT: By court order, yes, I'm going to order that.

MR. BARTON: Fair enough.

THE COURT: Okay. And in what time period do you need that, Mr. Andrus?

00:34:04 MR. ANDRUS: I would say within 10 days.

THE COURT: How about 10 business days?

MR. BARTON: Pardon?

THE COURT: Mr. Barton, can you provide that in 10 business days?

00:34:21 MR. BARTON: I cannot, Your Honor. We talked-- when Mr. Andrus and I spoke at the meet and confer, I explained to him that to gather the information he is asking for I would need a -- I'm going to need some more time once the court decides if it needs to be turned over. So, you know, usually discovery requests is 30 days, I can do 20.

00:34:43

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 21 of 29

THE COURT: All right. Let's see, it is by court order and let's make it in 20 working days. All right?

MR. ANDRUS: Thank you.

THE COURT: All right. Now, what else? Is there anything else we can address? Is there anything further?

MR. ANDRUS: Um, well, I think those, you know, are the biggest impediments but so we asked for that but we also then would like a specific order for UPS to answer and address each of the requests and provide answers to those as we have set forth in our updated status report.

THE COURT: Okay. Mr. Barton, why has UPS chosen not to answer? Mr. Barton? Mr. Barton? Can we try reaching him again?

THE CLERK: He can dial back in again.

THE COURT: Okay.

MR. BARTON: There we go, Your Honor.

THE CLERK: Hello?

THE COURT: Mr. Barton?

MR. BARTON: There we are. Hello.

THE COURT: Okay. I think I am speaking in an echo now. Just a second. Can you hear me now? Mr. Barton? Mr. Barton? Hello?

THE CLERK: Hello? One more time and then maybe we can call him directly. Should I try and call him directly? Are you there? Hello? I think something is wrong with our

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 22 of 29

system.

THE COURT: With ours?

THE CLERK: I think so.

MR. ANDRUS: I have his cell phone number if that will help. (602) 510 --

THE CLERK: (602).

MR. ANDRUS: Yes. 512, excuse me, 510-2994.

THE CLERK: 602.

MR. ANDRUS: (602) 510-2994. Yes.

THE CLERK: Call this one more time and let's see if we can get in.

THE COURT: Yes. Mr. Barton?

MR. BARTON: Hello. Yes.

THE COURT: We reconnected somehow. Sorry if that's on our end. Counsel was just discussing his request that you answer the questions rather than leave it as no response whatever. Can you give me a reason why I shouldn't grant that order or that request?

MR. BARTON: Because you don't need to. The party agrees.

THE COURT: As to UPS, sorry.

MR. BARTON: No, yeah the only reason you shouldn't is because we have already agreed. If you look at Exhibit B to our summary, when Mr. Andrus and I met to talk about this issue I pointed out to him that the plaintiffs were employed

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 23 of 29

by GBS not UPS which is why we answered on behalf of GBS. He has asked that we respond by -- on behalf of both entities nonetheless and I agreed to do so. I told him that when -- as soon as this court addressed the other issues we were addressing, we would provide a response by UPS and either provide separate answers to the extent those answers are different and distinct, or simply say that UPS's answers are the same as GBS's and I will do that. So there is no need to order me to do so, I will do so.

00:44:00

THE COURT: By when?

00:44:20

MR. BARTON: We were also talking when we would produce this information. I have asked for 20 days. If I could have that time that is when I will do it.

THE COURT: Mr. Andrus, any response to that?

MR. ANDRUS: Well, they haven't responded and we have brought it up multiple times and then his response he says or confirm that its responses are consistent with. It is still not a response. I don't know that I'm getting a response. And if these documents are coming from UPS, it is only right under the rules that I have responses from the defendant and not some -- some other entity. So I would I would appreciate an order. The timeframe I guess works for me, I have been, you know, patient all along, but I would request that still that the court order them to respond to and grant the motion as to request for production 1 through

00:44:37

00:44:55

00:45:18

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 24 of 29

19 and interrogatories 1 through 7, please.

THE COURT: Any further response, Mr. Barton?

MR. BARTON: No, Your Honor, we will do so.

THE COURT: All right. Then that's the order of the court. All right. Anything further?

00:45:35

MR. ANDRUS: Just we grant the motion and we also are asking for our additional attorney's fees for having to now compel this discovery effort even with UPS.

THE COURT: All right. Mr. Barton, any response to that request?

00:45:57

MR. BARTON: Yes, Your Honor. We briefed that already. This appears to be a tactic employed by Mr. Andrus to bully the defendants. We have met with him in good faith now. We have told him what we will produce. We have discussed and compromised on every one of his issues. We have -- we did so the first time and it was only his running down to court before we had an opportunity to meet and actually meet and confer that he brought this to the court's attention in the first place. It didn't need to happen, it shouldn't have happened, counsel working together and cooperatively under Utah's rules should have been able to work this out and there was no need for this motion. So we have addressed that already in our objections to the order that's been filed and I'll leave it on that.

00:46:18

00:46:38

THE COURT: All right. Thank you. Any response,

00:46:53

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 25 of 29

00:47:13 00:47:35 00:47:54 00:48:11 00:48:31

Mr. Andrus?

MR. ANDRUS: Yes. This case falls squarely precisely on Federal Rules of Civil Procedure 37(a)(5)(A). They have now produced some documents in piecemeal but only after we have had to file our motion. It has been disguised as supplemental responses and we have asked for specific documents. It's like if we paint a certain grain on the sea and then they provide the whole beach and try and have us figure it out but we have -- or give us a box of Whitman Sampler Chocolates without the map inside the box. So we really have been hampered, it has obstructed our rights. We have got both plaintiffs depositions scheduled for next week. And in light of this further delay, we would ask for -- that those be postponed until they provide us with these documents so that we can prepare ourselves for those depositions.

And so this has obstructed plaintiffs' rights. We're now six months and now a month or two away from the discovery cutoff and they have just jammed us on the depositions and then when we have had to bring a motion then they bring a few documents and so this -- this squarely --

THE COURT: Well, so there is two questions in this regard, attorney's fees and whether or not the depositions should be continued.

Mr. Barton, anything further you would like to say?

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 26 of 29

MR. BARTON: Yes, Your Honor. Thank you. First let me address the depositions because that is critical. As we have briefed before this court and as is evident in the record in this case, we have been asking for dates for plaintiffs depositions since January of this year. Since January. And talk about stalling and obfuscation and evasiveness, the plaintiff has absolutely refused to agree to dates.

Finally, when I met with him in person on May 3rd I sat down with him and the first topic was I need to be sure that those depositions are going forward as noticed because we have had too many times where you have just avoided the question or refused to answer or refused to provide us a date, we're entitled to take those depositions. They're the plaintiffs in this case, they brought this lawsuit, they have the burden of proof. And so they are obligated to provide what testimony they know and what evidence they have when we ask for that evidence. He, in our meet and confer, if you look at Exhibit B to our -- to my -- to the statement with regard to our meet and confer, he confirmed for me that he would produce his clients on that date. And now at this last minute once again I'm being ambushed at a hearing where this was not even an issue and he is now saying that he wants to back out of that date as well. Those depositions should go forward as noticed and as agreed and as confirmed

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 27 of 29

00:50:18 in our meet and confer. And for him to try and back out now when we have prepared for those dates and properly noticed those dates and patiently awaited for those dates is absolutely ridiculous. So the depositions absolutely have to go forward.

Secondly with regard to -- I can't remember what the other issue was. Oh, the fees.

THE COURT: The fees.

00:50:26 MR. BARTON: That has been briefed, Your Honor. That's been briefed. We'll submit that on our briefs.

00:51:00 THE COURT: All right. And that will be taken under advisement. Excuse me, I am going to order that the depositions go forward as noticed. However, if based upon the information to be provided within the 20 days there is a good faith reason as to why those should be reopened the court will consider it. All right?

MR. ANDRUS: Very good.

THE COURT: All right.

MR. BARTON: Thank you, Your Honor.

00:51:13 THE COURT: As to the fees, we'll take that under advisement see where we go with this. All right?

00:51:48 So the only issue that needs to be decided and will be decided quickly because in two weeks I'm going to be retiring, you will get the answer to the issue regarding the relevant timeframe very quickly. All right?

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 28 of 29

MR. ANDRUS: Okay. Thank you.

MR. BARTON: Thank you, Your Honor.

THE COURT: All right. Is there anything further today.

00:52:00 MR. BARTON: I hope you recover your voice soon.

THE COURT: Boy, so do I. Thank you. All right.

MR. BARTON: Thank you for doing this. It was probably not pleasant. Have a great day.

THE COURT: Have a good day yourself. Thank you.

00:52:13 MR. ANDRUS: Thank you very much.

THE COURT: All right.

MR. BARTON: Thank you.

MR. ANDRUS: Thank you. You did it.

THE COURT: All right. We'll take note of that too. 00:52:23 All right. Thank you gentlemen. Have a good rest of the day.

MR. BARTON: Thank you.

(Whereupon, the hearing concluded.)

Case 2:18-cv-00612-HCN-PMW Document 58 Filed 07/30/19 Page 29 of 29

**REPORTER'S CERTIFICATION**

I hereby certify that the foregoing transcript was taken from a tape recording stenographically to the best of my ability to hear and understand said tape recording, that my said stenographic notes were thereafter transcribed into typewriting at my direction.

Dated this 30th day of July, 2019.

__________________________

Laura W. Robinson